**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| JOSEPH CICHON #B16996, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11-CV-06840 |
| | ) | |
| MICHAEL LEMKE, | ) | |
| Warden of Stateville Correctional Center, | ) | |
| Illinois Department of Corrections,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Joseph Cichon ("Cichon") has filed a petition for a writ of habeas corpus ("Petition")

under the Antiterrorism and Effective Death Penalty Act ("AEDPA," 28 U.S.C. §2254(d)).[2]

Cichon challenges his 105 year sentence stemming from convictions in Illinois state court on four

counts of aggravated criminal sexual assault, two counts of criminal sexual assault, one count of

aggravated criminal sexual abuse and three counts of child pornography, basing his challenge on

two ineffective-assistance-of-counsel claims.[3]  For the reasons stated hereafter, Cichon's Petition

---

[1]  As always in federal habeas cases, the named respondent is the head of the custodial
institution where the petitioner is housed--in this instance originally Warden Marcus Hardy.
Because he has since been succeeded by Michael Lemke, the latter's name has been substituted
in the case caption (see Fed. R. Civ. P. ["Rule"] 25(d)).  Instead of employing either Warden's
name, this opinion will simply use the term "Respondent" throughout.   Additionally this opinion
will refer to Cichon's Amended Petition for Writ of Habeas Corpus as "C. Mem. --," to
Respondent's Answer as "R. Mem. --" and to Cichon's Reply to the Answer as "C. R. Mem. --."

[2]  All later references to that section and its subparts will take the form "Section 2254,"
omitting the prefatory "28 U.S.C."

[3]  Cichon also asserts a third ground for relief --"Ineffective assistance of counsel (Geis)
on direct appeal by failing to raise the issues identified in Ground One and Ground Two during

is denied in its entirety.

## Statement of Facts

Under Section 2254(e)(1) the state court's findings of fact are presumptively correct in any federal habeas proceeding. Hence this opinion begins with the Illinois Appellate Court's recitation in the course of its direct review of Cichon's case (People v. Cichon, 408 Ill. App. 3d 1020, 1021-25, 945 N.E.2d 140, 142-45 (3d Dist. 2011)):

### I. Original Proceedings

In 1990 and 1991, the State charged defendant with 54 counts consisting of: aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, and child pornography. Pursuant to a negotiated plea agreement, he pled guilty to six counts of aggravated criminal sexual assault, three counts of Class 1 felony child pornography and three counts of Class 3 felony child pornography; the State dropped the remaining charges. The court sentenced him to the agreed-upon sentence of 25 years. The victims' families approved of the deal to avoid putting the children through a trial.

### II. Defendant Hires Geis

In 1994, defendant hired James Geis ["Geis"] to file a postconviction petition, claiming the attorney who represented defendant in the original plea negotiations and sentencing had a conflict of interest. During the course of that representation, Geis explained to defendant the possible consequences if he chose to have his original guilty plea vacated. Geis believed defendant could possibly receive a 30–year sentence if he was retried, but believed that it was unlikely defendant would receive a sentence greater than his original 25 years. This advice is documented in a letter that Geis sent to defendant.

However, Geis later told defendant that it was possible that any sentences he received would have to be served consecutively and could lead to a much longer

Petitioner's appeal" (C. Mem. 52). But both sides agree that the third argument was advanced only to ensure that the two substantive grounds were not procedurally defaulted (R. Mem. 24; C. R. Mem. 15). Accordingly only the two substantive contentions will be addressed in this opinion. As for Ground Three, it is procedurally defaulted and is denied.

sentence than the one he was serving.[4] Geis explained that the prosecutor in charge, Timothy Huyett ["Huyett"], was going to refile all 54 counts if defendant vacated his guilty plea. At some point before his original guilty plea was vacated, defendant met with Geis and Huyett. Huyett explained that he was going to seek a sentence in excess of 100 years.

In open court on the day the trial court granted defendant's petition, Geis stated that he had explained to defendant that it was possible he would face consecutive sentencing and receive a much longer sentence than his original sentence. Huyett also explained that defendant would face a maximum sentence of 60 years if he chose to go to trial again. After hearing both statements, defendant still chose to go forward with his petition.[5] The trial court granted defendant's petition and vacated his original guilty plea and conviction. At this point, Geis's representation of defendant ended.

### III. Representation by Bute and Cappellini

After Geis withdrew, the court assigned public defenders Daniel Bute ["Bute"] and Timothy Cappellini ["Cappellini"] to represent defendant. Huyett spoke with Bute before the arraignment and offered defendant a sentence of 25 years if he would plead guilty. He indicated that the deal was only available for seven days. Prior to the arraignment, Bute and Cappellini tried to convince defendant that the 25–year term was an offer that he should accept. They provided case law to defendant and explained that because of recent interpretation of the statute by the Illinois Supreme Court, he would be subject to a much greater sentence if he went to trial.

Defendant was arraigned on the new charges within a week of his guilty plea being vacated. At the arraignment, Huyett clarified that he misspoke during the postconviction hearing where defendant's guilty plea and sentence were vacated

_____

[4] [Footnote by this Court]  Cichon argues that the Appellate Court's finding that Geis told Cichon that his sentence could be "much longer," as opposed to just "longer," was unsupported and erroneous (C. Mem. 36-37).  That contention will be addressed in more detail below.

[5] [Footnote by this Court]  More specifically, Geis acknowledged that he was aware that the issue of whether Cichon could receive consecutive sentences was currently before the Illinois Supreme Court and that it was possible (but not definite) that a consecutive sentence would be imposed.  Geis specifically stated that Cichon "has been made aware" of the line of cases and that "Mr. Cichon does understand [that it is possible that a consecutive sentence could be imposed] and has indicated to me that based on that, he wishes to proceed with this postconviction matter and have his pleas vacated" (C. Mem. App'x at AE247-48).  When the court then asked Cichon if that statement was correct, he responded affirmatively (id. at AE248).

when he said defendant was subject to a maximum sentence of 60 years. He clarified that the maximum sentence defendant could receive was 120 years. He also reiterated that the 25–year offer would only be available for a "short time." The court asked Bute if he would like the court to admonish defendant on the maximum possible sentence and Bute declined.

Bute and Cappellini were unable to convince defendant to accept the plea. Bute later testified defendant was sure he would win at trial. The case went to trial and defendant was convicted of four counts of aggravated criminal sexual assault, two counts of criminal sexual assault, one count of aggravated criminal sexual abuse, and three counts of Class 1 felony child pornography. He was sentenced to consecutive terms totaling 105 years. This court affirmed defendant's sentences on direct appeal.

## IV. Postconviction Proceedings

Defendant filed two unsuccessful postconviction petitions before he was granted leave to file the successive postconviction appeal which is the subject of this appeal. In this petition, he raised three issues, two of which he pursues with this court. First, he claims that his sixth amendment right to counsel was triggered when the State plea bargained with Geis in 1997 prior to the court vacating his sentence and guilty plea. He argues that Geis was ineffective because he advised defendant that he faced only 25 years and that he should reject the plea. Second, he argues that Bute was ineffective at the arraignment because he waived the court's offer to admonish defendant about the maximum possible penalty.

## V. Third–Stage Evidentiary Hearing

The petition advanced to stage-three proceedings. At the evidentiary hearing, Geis, Cichon, Huyett, Bute and Cappellini testified.

Geis testified that he originally told defendant that if he were retried he would face at most 30 years. He said that he told defendant that because it was the law when they originally filed the postconviction petition. Geis also testified that once he became aware that it was possible that defendant might face an extended sentence, he never calculated exactly how much time defendant faced. Geis went on to say he had explained to defendant that if he were retried, it was possible he would face consecutive sentences instead of concurrent sentences and that he could receive a sentence much longer than 25 years. Geis testified that defendant was "quite intelligent." Geis said that not only had he explained to defendant that he might face an extended sentence but the trial judge also told defendant that he could receive consecutive sentences.

Geis explained that the law was changing between the time he started to represent defendant in 1994 and 1997 when the evidentiary hearing was held. Geis testified that he had explained to defendant that the law was changing and that the issue of mandatory consecutive sentences was before the Illinois Supreme Court at the time of the hearing. In response to a question by the court, Geis testified that "[he] didn't think that [his representation] was ineffective assistance of counsel."

Defendant testified that the only information that he ever received from Geis was that the longest sentence he could receive would be 30 years. He also said that Geis told him that the prosecutor would likely try to scare him into withdrawing his petition by telling him he faced a sentence much longer than 30 years. Defendant testified that when he heard Huyett or Bute talk about sentences longer than 30 years, he assumed they were posturing to get him to back down. Defendant testified that had he known he faced even the possibility of 60 years, he would have withdrawn his postconviction petition. He prosecuted his original postconviction petition in reliance on what Geis told him. He did admit that Bute told him that his understanding of the time he was facing was wrong. Defendant testified that Bute told him he faced 40 or 45 years. He said the only person who ever told him he could receive over 100 years was Huyett.

Following defendant's testimony, Huyett testified. He said that prior to the day the court granted defendant's petition, Huyett, Geis and defendant discussed what would happen if the petition was granted and the case went to trial. Huyett testified that he explained to defendant that he would receive 100 years or more at trial. According to Huyett, defendant responded by saying he was going to win at trial. Huyett also testified that on the day defendant's petition was granted, he explained to him that he faced a sentence of up to 60 years. Huyett explained that he corrected that mistake at the arraignment when he explained that the defendant could receive up to 120 years.

Following Huyett, Bute testified. He said that after he was appointed, he contacted Huyett to see if he would still offer 25 years. Huyett offered a 25–year deal if defendant accepted in the next seven days. Bute said he told defendant that he could not give him an exact length of sentence he could get at trial because he had not seen the evidence yet. However, he did tell him that given the charges he could get up to 80 years. Bute described the 80–year figure as just a ballpark figure.

Bute testified that defendant had a letter from Geis and believed he could not get more than his original sentence. Bute testified that Cappellini brought case law that showed defendant could get more than 25 years. Bute testified that they could not convince defendant to take the 25 years. Bute testified that defendant "wasn't going to accept 25 years." Bute said he tried to get less than 25 years from Huyett

but could not.

Cappellini was the final witness to testify. He testified that he researched the potential sentence that defendant could receive and tried to convince defendant that he should take the 25–year offer from Huyett. Cappellini said that defendant told him he was wrong about the potential sentence so Cappellini showed him the actual case law and read portions of it, explaining that defendant did face a sentence much longer than 25 years. When asked who made the decision not to accept the 25–year deal, Cappellini testified that defendant made the decision. Cappellini said that he and Bute tried to convince defendant for between 30 and 45 minutes, but defendant would not accept the 25–year deal.

The court denied the petition. The trial court found that prior to the court granting defendant's first petition, there were some negotiations, discussions and advice given by Geis regarding potential plea negotiations that might occur if defendant decided to vacate his original guilty plea. The court also found that Geis originally told defendant that he was only subject to 30 years, should he go to trial and be convicted.

The trial court found that Geis informed defendant that the [Illinois] supreme court was reviewing the issue of mandatory consecutive and concurrent sentences. The court went on to say that although Geis had not sent a letter to defendant explaining the possibility of consecutive sentencing, it was explained in open court in front of defendant and he still chose to proceed.

The court also found that prior to the final hearing during which defendant's original guilty plea and sentence were vacated, Huyett, Geis and defendant had a meeting. Huyett made it clear that it was his position that defendant faced 100 years or more by vacating his original plea. The court said that in addition to this meeting, defendant met with Bute and Cappellini and they told him he was looking at up to 80 years.

The court found that Geis may have been ineffective originally because of the letter he sent, but that any deficiency was cured by the discussion between defendant, Huyett and Geis. The court also said that it found no reasonable reliance on Geis by defendant. The court said it found no ineffective assistance by Bute after he began representation of defendant.

Except where otherwise indicated later, that factual account fairly reflects the record.

Additional facts not addressed by the Illinois Supreme Court on direct review will be discussed later in this opinion as they become relevant.

## Procedural History

After his conviction in 2000 Cichon first sought direct review of his sentence by appealing to the Third District of the Illinois Appellate Court. It modified the sentencing order and affirmed the 105 year sentence on January 23, 2002. Cichon next sought leave to appeal to the Illinois Supreme Court, which was denied on May 20, 2002. Cichon then sought collateral review of his sentence, filing three successive post-conviction petitions on December 2, 2002, October 8, 2004 and August 24, 2006, each of which was denied and appealed to the Appellate Court and the Illinois Supreme Court, both of which denied him relief on all occasions. Cichon also filed an earlier federal petition in this Northern District of Illinois on February 15, 2005. That Petition was dismissed without prejudice for failure to exhaust state court remedies.

In his third state court post-conviction petition (the one relevant to this opinion) Cichon raised these three issues, two of which bear upon the present case (C. Mem. 7-8, emphasis in the original):

> 1. Petitioner was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and the laws of the State of Illinois <u>before</u> charges were reinstated on May 23, 1997.

> 2. Petitioner was denied the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution and the laws of the State of Illinois <u>after</u> charges were reinstated on May 23, 1997.

> 3. Petitioner was denied the right to due process of law under the Fifth Amendment to the United States Constitution and the laws of the State of Illinois because he was not admonished correctly, and was instead admonished incorrectly, about the consequences of vacating his plea.

After the Circuit Court denied Cichon relief on those claims, the Appellate Court affirmed the result on March 17, 2011 in the opinion quoted earlier. Finally, the Illinois Supreme Court

denied leave to appeal on September 28, 2011.

**Standard of Review**

Before any federal court can address the merits of a Section 2254 petition, petitioner must have both exhausted his state remedies and avoided any fatal procedural defaults (Section 2254(b)(1); Perruquet v. Briley, 390 F.3d 505, 513-15 (7th Cir. 2004)). Claims are exhausted "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing review of one's conviction in state court" (Wallace v. Duckworth, 778 F.2d 1215, 1219 (7th Cir. 1985) (per curiam)).

Procedural default as to a habeas claim occurs in either of two situations: "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) that claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred" (Perruquet, 390 F.3d at 514). It is undisputed that Cichon has adequately cleared both of those procedural hurdles (R. Mem. 24).[6]

Any claims that manage to survive those threshold procedural obstacles must then satisfy Section 2254(d)'s stringent prerequisite for granting habeas claims that the state courts have considered and rejected on their merits:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings

---

[6] Respondent does maintain that Cichon's third earlier-quoted contention is procedurally defaulted (R. Mem. 25; C. Mem. 15), but that was clearly not intended as a stand-alone claim and will not be addressed further.

unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus the federal courts will not disturb a state court's application of federal law "unless it is both incorrect and unreasonable" (Carter v. Thompson, 690 F.3d 837, 843 (7th Cir. 2012) (internal quotation marks omitted)). As Thompkins v. Pfister, 698 F.3d 976, 983 (7th Cir. 2012) (internal quotation marks omitted) explains:

"Unreasonable" in this context means something like lying well outside the boundaries of permissible differences of opinion.

And as to factual matters, "[t]he state court's factual determinations are entitled to a presumption of correctness, and the petitioner has the burden of overcoming this presumption by clear and convincing evidence" (Thompkins, 698 F.3d at 983; Section 2254(e)(1)).

All of those things, then, provide the procedural matrix for consideration of Cichon's substantive claims. This opinion now turns to that task.

### Ineffective Assistance of Counsel--Geis

Cichon first charges ineffective assistance of counsel on the part of Geis "during plea bargaining during the four months before charges were reinstated in 1997, regarding petitioner's decision to accept or reject the 1997 plea offer of 25 years" (C. Mem. 48-49, emphasis in the original). Two separate grounds were articulated by the Appellate Court for denying Cichon's first ineffective-assistance contention. Those grounds will be addressed seriatim.

**Double Jeopardy Analysis**

Cichon, 408 Ill. App. 3d at 1026-27, 945 N.E.2d at 146 held that Cichon's double jeopardy argument was not cognizable because, as a matter of law, there could not have been plea bargaining going on at the relevant times. On that score the court first found that Geis "never represented defendant in a proceeding that resulted in defendant's conviction" (id. at 1026, 945 N.E.2d at 146). According to the court Geis represented Cichon only in the initial postconviction proceedings, "the result of which was that defendant's previous guilty plea was vacated" (id.). Because the relevant state statute provides that a prisoner can file a petition for postconviction relief only if he claims that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both" (725 ILCS 5/122-1(a)(1), emphasis added), and because Geis represented Cichon only in a proceeding in which his conviction was vacated, the court found no relief appropriate.

Cichon acknowledged that chain of events, but he argued that "once Huyett discussed possible outcomes of defendant's postconviction proceedings, he created bifurcated proceedings: one, the postconviction proceedings, and the other, the second criminal proceeding against defendant" (Cichon, 408 Ill. App. 3d at 1026, 945 N.E.2d at 146). Because "the second criminal proceeding" resulted in Cichon's ultimate conviction, Cichon argued that the claim was cognizable. That contention was flat-out rejected by the Appellate Court (id. at 1026-27, 945 N.E.2d at 146 ( citations omitted and emphasis added)):

> There could be no second criminal proceeding against defendant while his
> original guilty plea and sentence remained valid. Huyett's actions prior to
> the court's vacating defendant's guilty plea and sentence cannot have been

plea bargaining <u>because it was impossible for the State to bring charges against defendant due to the double jeopardy clause of the United States Constitution</u>. Huyett was trying to explain to defendant that it was not a good idea to have his original sentence and plea vacated because the outcome would likely be a much longer sentence. He was unable to bargain with defendant <u>because it was impossible at that point for Huyett to charge defendant with anything</u>. Therefore, Geis never represented defendant in a proceeding that is cognizable in a postconviction proceeding.

Although the court did not dispute that the relevant conversations between Cichon, Geis and Huyett took place, it found instead that the conversations could not, as a matter of law, have constituted "plea bargaining." But the Appellate Court offered no support or citations (save one reference to the Fifth Amendment itself) for that position.

Respondent does not defend the Appellate Court's position as a matter of law,[7] but rather argues that the court was making a <u>factual</u> finding that no plea negotiations took place (R. Mem. 12-13). If the Appellate Court's holding was indeed based on a factual finding, this Court would of course be bound to accord it a good deal of deference (<u>Thompkins</u>, 698 F.3d at 983). But the above-quoted text explicitly says that the relevant conversations <u>could not</u> have been plea bargaining because it was <u>impossible</u> under the Double Jeopardy Clause. That is a legal rather than a factual determination, because the issue is not whether the Appellate Court's factual findings that certain conversations took place (elaborated in detail in the earlier "Statement of Facts") are legitimate, but rather whether those conversations could, as a matter of law, be "plea negotiations."

Cichon urges that the court's conclusion was erroneous because the double jeopardy

---

[7] Respondent's only mention of the Appellate Court's "matter of law finding" was in a footnote that stated "Even assuming (but not conceding) that court's legal determination was unreasonable, its factual finding was not" (R. Mem. 13 n.3).

clause does not apply to the situation here.  In support of that argument he cites Lafler v. Cooper, 132 S. Ct. 1376 (2012).[8]  After ruling on an ineffective assistance of counsel claim, Lafler, id. at 1391 (citations omitted and emphasis added) remanded the case and ordered the State to reoffer the plea agreement:

> The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement.  Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentences from trial undisturbed.

That remedy plainly requires the plea to be offered first--before the existing conviction is vacated.  As Cichon notes, "[t]his sequence of events would be unconstitutional if the appellate court's double jeopardy analysis were correct" (C. Mem. 47-48), and "[i]t should be safe to assume that the Supreme Court of the United States is not ordering all trial courts of the United States to apply a remedy that violates the double jeopardy clause of the United States Constitution" (C. R. Mem. 8).

It has long been clear that the primary purpose of the Double Jeopardy Clause is to protect a defendant from multiple punishments or successive prosecutions for the same offense, so that "where there is no threat of either multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended" (United States v. Wilson, 420 U.S. 332, 344 (1975)).  Here there was no such threat.  There is no question that once Cichon's conviction was properly

---

[8] Although Lafler was issued a full year after Cichon was decided, it is not being cited here for its central holding, but rather for its dictum that implicitly affirms an existing rule (see Teague v. Lane, 489 U.S. 288 (1989)).  Respondent has not argued that the Lafler rule is inapplicable under Teague--indeed, our Court of Appeals has already held in Hare v. United States, 688 F.3d 878, 879 (7th Cir. 2012) that neither Lafler nor its companion case, Missouri v. Frye, 132 S.Ct. 1399 (2012), set out a "new rule" under the Teague formulation.

vacated, he could be tried again for the same offense (Lockhart v. Nelson, 488 U.S. 33, 38

(1988)), so that he could engage in plea negotiations for the second proceeding. To say that

because the sentence had not yet been vacated technically (even though it was clear that it would

be) would really exalt form over substance, and this Court has found no precedent that would

support such a distinction. That coupled with Lafler's implicit acknowledgment of basic double

jeopardy analysis makes clear that the Appellate Court's double jeopardy treatment was

incorrect.

But even so, this opinion must address each state court ground for decision, for it cannot

grant Cichon relief unless none of the Appellate Court's grounds for decision survives Section

2254(d) scrutiny (Wetzel v. Lambert, 132 S. Ct. 1195, 1196-99 (2012) (per curiam)). Thus the

Appellate Court's alternative findings must also be discussed.

## Strickland Analysis

After finding that Cichon's claim as to Geis was not cognizable under the state statute,

Cichon, 408 Ill.App.3d at 1027, 945 N.E.2d at 146-47 went on to hold that even if that were not

so, Geis' actions still did not amount to ineffective assistance of counsel under the standard set

out in Strickland v. Washington, 466 U.S. 668 (1984). Under the demanding criteria applicable

to review of a Section 2254 petition, there is no question that the Appellate Court's ruling must

be upheld on both claims of ineffective assistance of counsel.

Cichon claims that instead of correctly applying Strickland, the Appellate Court

improperly directed its inquiry to three "erroneous" subjects (C. Mem. 49): (1) whether Cichon's

decision to reject the 1997 plea offer was "knowing and voluntary" because other people made

him aware of the risk, (2) whether Cichon's reliance on Geis' advice was reasonable in light of

the contrary advice he received from other people and (3) whether any deficiency by Geis was "cured" by the advice given by other people about the risk. To establish a claim for ineffective assistance of counsel, Cichon must demonstrate both that his counsel's performance fell below an "objective standard of reasonableness" and that he was prejudiced by the deficient performance (Strickland, 466 U.S. at 688, 694).[9] Those two inquiries can be made in any order, and if the court finds that one criterion is not met the other need not be addressed (id. at 697). Under Strickland "[j]udicial scrutiny of counsel's performance is highly deferential, and under AEDPA we defer to the state court's application of Strickland on federal habeas review, meaning that our evaluation of counsel's performance is doubly deferential" (Thompkins, 698 F.3d at 986 (internal citations and quotation marks omitted)).

To demonstrate prejudice a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

_____

[9] Respondent attempts to argue, pointing to Peoples v. United States, 403 F.3d 844, 848 (7th Cir. 2005), that Cichon cannot bring an ineffective assistance of counsel claim because he is isolating one piece of bad advice from Geis as opposed to aggregating Geis' whole performance alongside the performance of the two other attorneys (R. Mem. 16-18). That argument is not well taken. Although Peoples, id. stated that "[c]ounsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief" (id.), Respondent takes that quotation entirely out of context. Peoples, id. (quoting Sanders v. United States, 373 U.S. 1, 16 (1963)) was clearly making the point that "'[j]ust as one who makes and loses a contention that a confession is involuntary because of physical coercion cannot start over by adding an allegation of psychological coercion, one who makes and loses a contention that counsel was ineffective for four reasons cannot start over by choosing four different (or four additional) failings to emphasize.'" That is plainly not what Cichon is attempting to do here, and Peoples does not stand for the proposition that an attorney's "objectively unreasonable" and prejudicial mistake is somehow cured by the fact that he made only one such mistake or that other attorneys did not make mistakes. Geis' other advice and the advice of Bute and Cappellini may be relevant in determining if Cichon was prejudiced (to be discussed below), but Respondent's argument that all of the attorneys' performances must be aggregated is itself a prejudicial misstatement of Peoples.

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" (Strickland, 466 U.S. at 694). In the context of plea negotiations, Strickland's prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process" (Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Even more specifically, in a case like this one, where counsel's bad advice also led a defendant to reject a plea offer and the defendant was then sentenced to a much greater term of imprisonment after standing trial, Lafler, 132 S.Ct. at 1385 teaches:

> In these circumstances a defendant must show that but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Cichon, 408 Ill. App. 3d at 1027, 945 N.E.2d at 146-47 did not explicitly address whether Geis' conduct was "objectively unreasonable,"[10] focusing instead on the trial court's determination that any deficient advice by Geis would have been "cured" by later admonitions that Cichon received to the contrary. On that score the court found (id. at 1027, 945 N.E.2d at 147) that Geis' advice was not the "but for" cause of Cichon turning down the plea agreement.

While the Appellate Court may not have laid out that part of its analysis in the explicit

---

[10] For that reason this opinion need not to dwell on it either. But to provide context it should be noted that the issue whether consecutive sentencing could apply in this case was in fact before the Illinois Supreme Court at the time (see People v. Garcia, 179 Ill.2d 55, 688 N.E.2d 57 (1997); G. Mem. Ex. W at 4-7). After Garcia was decided (by a 4-3 vote), Geis' earlier interpretation and prediction turned out to be incorrect. But the question whether Geis' advice was "objectively unreasonable" in light of the circumstances is not entirely black and white (as it might have been if Geis had been objectively misstating clearly-decided law). That issue may be put aside, however, for this opinion will assume (without deciding) for purposes of the prejudice analysis that Geis' advice was unreasonable.

terms of the <u>Strickland</u> framework,[11] the court was unquestionably applying <u>Strickland</u>'s second test--a prejudice analysis. Cichon argues that the Appellate Court was applying some other erroneous standard, such as the "knowing-and-voluntary test," by focusing on whether Geis' deficits were "cured" by other advice. But on the facts of this case, the Appellate Court's treatment was really just a way of asking <u>Strickland</u>'s question of whether a defendant was prejudiced by the allegedly deficient advice. In looking at whether Cichon actually knew that he could receive more than a 25 year sentence, the court was not merely inquiring whether Cichon's rejection of the plea was "knowing and voluntary"-- instead its inquiry was whether Geis' bad advice actually had the effect of prejudicing Cichon. Here, if the presumptively bad advice was timely "cured" in some other way, there was plainly no prejudice. Discussing whether the problem was "cured" or whether the advice was the "but for" cause is therefore not erroneous, but rather just a way of getting at the essential question.

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-88 (2011) has recently opined at length about the high standard a district court must apply in reviewing a <u>Strickland</u> determination in a habeas petition. <u>Harrington</u> repeatedly reiterated that a habeas petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law <u>beyond any possibility for fairminded disagreement</u>" (see, e.g., <u>id</u> at 786-87, emphasis added). Given that demanding test in answering the question whether there is "any reasonable argument" to support the state court's determination, this Court cannot say that the Appellate Court's decision was "contrary to, or involved an unreasonable application of, clearly

---

[11] <u>Cichon</u> did, however, cite <u>Strickland</u> and laid out its two-prong test in an earlier part of its opinion (408 Ill. App. 3d at 1025, 945 N.E.2d at 145).

established Federal law" as defined by Section 2254(d).

While it may perhaps be true that reasonable minds could disagree about whether Geis' performance met the <u>Strickland</u> test, that is not enough to grant habeas relief. As <u>Harrington</u>, 131 S.Ct. at 786 put it, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." And the Court likewise added (<u>id</u>. at 288) that "[t]he <u>Strickland</u> standard is a general one, . . . the range of reasonable applications is substantial." Cichon seeks to surmount that difficult hurdle by arguing that the prejudice standard in this context means that there must be a "<u>reasonable probability</u> that the result would have been different" (C. Mem. 14, emphasis in the original). But that question was for the Appellate Court to resolve. This Court's role is to ask whether any reasonable mind could find that there is no reasonable probability that the result would have been different.

Here <u>Cichon</u>, 408 Ill.App.3d at 1027, 945 N.E.2d at 147 found that Cichon "did know by his arraignment that he faced up to 120 years and he still rejected the deal the State offered." That was plainly not an unreasonable determination for purposes of Section 2254(d). In that respect <u>Cichon</u>, <u>id</u>. at 1027, 945 N.E.2d at 146 found no error in the trial court's having "focused on the statements to defendant that it was possible to get a larger sentence and that the supreme court was reviewing the issue, but it was possible that he would face mandatory consecutive sentences."

That position was more than amply supported, for there are many facts in the record that support the court's determination. For instance, Geis testified during the original proceedings that he had told Cichon about the line of cases regarding consecutive sentencing and that it was possible (though not mandatory) that a consecutive sentence would be imposed (R. Mem. Ex. W

at 6; see also C. Mem. App'x at AE064). Cichon then acknowledged that Geis' statement was correct (R. Mem. Ex. W at 7). Cichon's knowledge that it was not definite, though it was possible, that he might confront consecutive sentences if he opted for a trial and was found guilty provides a plausible explanation for why he might knowingly have decided to take the risk of going to trial.

It must be remembered as well that Cichon's other attorneys, Bute and Cappellini, both testified that they told him unambiguously that Geis was wrong and that Cichon could receive a sentence much greater than 25 years (C. Mem. App'x at AE147-61). Moreover, Cichon himself stated at one point (G. Mem. Ex. Y at 61):

> I admit to having some serious second thoughts along the way [before the second trial] when the State began propounding a new sentence of one hundred twenty years. But after actually seeing the pain I have caused and hearing the voices of those I have hurt, I sincerely feel that this trial will have been worth it, that no sentence would be too long if this trial that I chose way back then will help just one of my victims heal now.

No plainer acknowledgment could be imagined--Cichon admittedly knew that he could be subject to a 120-year sentence, yet stated a motivation for choosing to go to trial anyway.

Those and other facts all support the Appellate Court's determination. To be sure, Cichon's Petition sets out some facts pointing in the other direction. But under AEDPA it is for the state court--not this federal court--to weigh the facts and apply Strickland, and the Appellate Court did just that and confirmed that Cichon was not prejudiced. That determination was neither an unreasonable determination of the facts nor an unreasonable application of law under the demanding standards of Section 2254 (d). Accordingly Cichon's Petition must be and is denied as to Ground One.

## Ineffective Assistance of Counsel--Bute

All of the standards discussed in the preceding section apply with equal force to Cichon's second ineffective-assistance-of-counsel claim.  In that respect Cichon claims that Bute provided ineffective assistance of counsel when he refused the trial court's offer to admonish Cichon about the possibility of receiving a harsh sentence (C. R. Mem. 12-13).  As Cichon would have it, the Appellate Court (1) made an unreasonable determination of the facts in failing to consider certain testimony as to what Cichon was aware of at the time and (2) failed to apply the Strickland test properly, instead focusing improperly on (a) whether Bute gave Cichon correct advice about the risk, so that Cichon's rejection of the plea offer was assertedly knowing and voluntary, (b) whether Cichon's rejection of the plea was motivated by his belief that he would win his trial and (c) whether Cichon had already been told the risk, so that admonishment by the court would not have made a difference.

It is true that the Appellate Court discussed those issues.  In determining whether Bute's conduct was "objectively unreasonable," the court found that the trial court did not believe it was unreasonable to waive the court's offer to admonish Cichon (408 Ill. App. 3d at 1028, 945 N.E.2d at 147).  In that regard the Appellate Court found that the record supported that decision because of testimony that Huyett, Bute and Cappellini had all told Cichon about the risks (id.).  Ultimately the Appellate Court found that "[t]here is no reason to believe that after all this, defendant would have changed his mind if the judge had told him the same thing again.  Defendant rejected his offer because he thought he could win at trial" (id.).

Surely the Appellate Court was not discussing those facts to apply some separate and different test.  Rather it was obviously addressing why it was not "objectively unreasonable" for

Bute to make the determination that Cichon did not need the trial court's admonition. If Bute thought that Cichon already understood the issue or if he thought that Cichon had already been warned so many times that one more admonition would not make a difference, his decision could assertedly have been viewed as reasonable. To put the matter differently, this Court cannot say--in the "doubly deferential" posture that it must take--that Bute's advice was "objectively unreasonable."

In short, the Appellate Court was simply applying the Strickland test, and this Court cannot say that "no reasonable mind" could have come to the same determination (Harrington, 131 S.Ct. at 786-88). That being the case, Cichon's Petition must also be, and also is, denied as to Ground Two.

## Certificate of Appealability (COA)

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts mandates that this Court, having ruled adversely to Cichon, must issue or deny a COA. Under the circumstances here, it is unnecessary to seek arguments from the litigants before this Court turns to that task.

It is entirely understandable for Cichon to feel the keenest regret for the extreme custodial sentence he has visited on himself.[12] But that regret cannot justify his current (and most recent) effort to shift the blame to others, rather than acknowledging that his own knowing and deliberate roll of the dice is what brought on his 105-year sentence.

AEDPA has produced an extremely tough road for any state-convicted felon who seeks

---

[12] It can only be hoped that Cichon feels like regret for having committed the grievous crimes that led to that sentence.

federal relief.  But that road is not merely tough, but rather impassable, for a criminal such as

Cichon  who does not come even close to stating a case of constitutional deprivation that would

satisfy AEDPA's demands.  This opinion has gone to great lengths to explore Cichon's

contentions, and he has come up empty in every respect.

In short, this Court finds no predicate for the issuance of a COA, and it denies such

issuance.  Cichon is free to tender the same issue to our Court of Appeals.

**<u>Conclusion</u>**

For the above-stated reasons, Cichon's Petition for Section 2254 relief is denied in its

entirety, and no COA should issue.  Both of those determinations can be re-raised before our

Court of Appeals (the latter one first, of course).

                                           _____
                                           Milton I. Shadur
                                           Senior United States District Judge

Date:  February 12, 2013